IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARK A. BARKER                                                                                    PETITIONER
ADC #139988

v.                                         4:22-cv-00006-JM-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                          RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

### DISPOSITION

**I.    BACKGROUND**

Petitioner Mark A. Barker, an inmate at the East Arkansas Regional Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2), Brief in Support (Doc. No. 3), and Amended Petition for Writ of Habeas Corpus. (Doc. No. 4). On March 29, 2018, law-enforcement officers responded to a call regarding an alleged robbery at the Dodge's convenience store in West Memphis, Arkansas. (Doc. No. 25-1 at 138).

On April 10, 2018, Mark Barker was charged with four felonies committed on three separate dates in Crittenden County Circuit Court case no. CR18-339. (Doc. No. 15 at 2). The information charged Mr. Barker with the following counts: (1) aggravated robbery in connection with the March 29, 2018, Dodge's robbery; (2) possession of a firearm by certain persons in connection with the Dodge's robbery; (3) aggravated robbery of a West Memphis Sonic, taking place on April 4, 2018, involving robbery at knifepoint; and (4) aggravated robbery of a West Memphis Shell station, taking place on April 6, 2018. (Doc. No. 15-1 at 1).[1] On January 24, 2019, the information was amended to add a habitual-offender count, alleging Mr. Barker had been convicted of three previous felonies.[2] *Id.* at 14-15. On January 31, 2019, upon Mr. Barker's motion, the circuit court severed the charges. *Id.* at 18-19.

On February 5, 2019, at a jury trial in Crittenden County, Detective Dustin Burnett testified he was assigned to the Dodge's case and started reviewing the evidence, including a copy of the surveillance video from the surveillance system at Dodge's and the initial statements from Latasha Fields, the cashier at the store during the incident. (Doc. No. 25-1 at 138-139, 151). At the time, Ms. Fields described the assailant to be forty-two to forty-eight years-old, about five foot eight, and wearing all black. *Id.* at 147. She also reported that the assailant had a sawed-off shotgun on his left side with a tan handle and silver inside his pants. *Id.* at 148. From the initial report

---

[1] In December 2018, the circuit court granted Mr. Barker's motion for temporary release from custody to attend a twelve-month in-patient drug/alcohol rehabilitation treatment program. (Doc. No. 15-1 at 5-8). Mr. Barker was discharged from the program on January 12, 2019, for selling methamphetamine to other residents of the facility. *Id.* at 10-12. On January 16, 2019, upon request, the circuit court issued a warrant for Mr. Barker's arrest. *Id.* at 9-13. On January 23, 2019, Mr. Barker was charged with an additional aggravated robbery allegedly committed on January 17, 2019, while he was still at large. (Doc. No. 15-2).

[2] The felonies included a 1996 criminal attempted first-degree murder, a 1998 possession of a controlled substance, and 2007 possession of a controlled substance with intent to deliver. (Doc. No. 15-1 at 14).

and follow-up information, Detective Burnett established a possible suspect to be Mark Barker. *Id.* at 141. He then pulled Mr. Barker's driver's license photo on record and compared it to the video of the suspect from the Dodge's robbery, after which he started the warrant process that led to Mr. Barker's arrest. *Id.* at 141-43. Ms. Fields also testified at trial and further described the events on the night of the robbery. *Id.* at 152-58. She testified the man was initially wearing all black, left the Dodge's for ten to fifteen minutes, then returned in a different wardrobe. *Id.* at 154-55. She stated that he ordered some chicken then "leaned over [the counter] and said to me that this is a robbery." *Id.* at 156. She further elaborated, stating that he told her he "gotta gun, and he leaned over, and he pulled his left side of his shirt up indicatin' to me that he had an object." *Id.* Ms. Field's testified that "out of fear of being shot," she complied and gave him the money in the register." *Id.* at 157, 180. Throughout her testimony, Ms. Fields stated she was "fuzzy" and "wasn't sure" if there was actually a sawed-off shotgun (*Id.* at 172), but reiterated that she saw an object and that he told her he had a gun while leaning over the counter. *Id.* at 156, 164, 173-74, 178. The jury was shown the video surveillance (*Id.* at 161) and Ms. Field's identified Mr. Barker to be the man who robbed the Dodge's store that evening. *Id.* at 160-61.

On February 6, 2019, the jury convicted Mr. Barker of aggravated robbery and recommended a 120-month sentence. *Id.* at 224-25, 251. The sentencing order reflecting the conviction and sentence was entered the same day. (Doc. No. 15-1 at 20-21). On March 4, 2019, Michael Louden, Mr. Barker's appointed public defender on appeal, filed a notice of appeal.[3] *Id.* at 25-27.

---

[3] Mr. Ziegenhorn submitted a motion to substitute counsel so that Mr. Louden could handle to appeal. (Doc. No. 15-1 at 23-25).

On March 12, 2019, Mr. Barker appeared with his appointed counsel, Bart Ziegenhorn,[4] and entered a negotiated guilty plea to resolve all pending charges in CR18-339. (Doc. Nos. 3 at 20-33; 15-2 at 28-31). Ark. Code Ann. § 5-4-501(d)(1)(A), the Arkansas habitual-offender statute, mandates a life imprisonment without the possibility of parole for a defendant who has been previously convicted of two or more violent felony offenses and is then convicted of a class Y violent felony. Two of Mr. Barker's convicted felonies, attempted capital murder from Shelby County, Tennessee and recent conviction of aggravated robbery, are considered violent felonies under the statute; therefore, a conviction on any of the three pending aggravated robbery charges would mean an automatic life sentence.[5] *See* Ark. Code Ann. § 5-4-501(d)(2)(A)(iv) (aggravated robbery), (xv)(a) (attempted capital murder), B (including "[a] conviction of a comparable felony involving violence from another jurisdiction").

With this in mind, Mr. Barker pled guilty to a reduced charge of robbery on count three of CR18-339, with a sentence of twenty years' imprisonment followed by ten years' suspended imposition of sentence. (Doc. Nos. 3 at 28-30, 15-1 at 36). Pursuant to the plea agreement, the state moved for entry of *nolle prosequi* on the remaining counts two and four of CR18-339, the aggravated robbery charges in CR18-52 and CR19-96, a robbery charge in CR17-1137, a charge of possession of a controlled substance with intent to deliver in CR05-349, and a charge of indecent exposure in CR18-1206. (Doc. No. 15-1 at 37-41).

On April 16, 2019, Mr. Louden, filed a motion to withdraw the notice of appeal previously

---

[4] Mr. Ziegenhorn represented Mr. Barker at trial in CR18-399 and was the appointed counsel for other pending charges. (*See* Doc. No. 15-3 at 210).

[5] Mr. Barker's pending charges included: (1) count three of CR18-339, aggravated robbery of the Shell station, allegedly committed on April 6, 2018; (2) an aggravated robbery allegedly committed on January 8, 2018, from a Crittenden County case no. CR18-52; and (3) the aggravated robbery allegedly committed on January 17, 2019, after Mr. Barker was discharged from rehab, case no. CR19-96. (Doc. Nos. 15-1 at 1, 15-2 at 1, 15-3).

filed from Mr. Barker's aggravated robbery conviction, stating "[p]ursuant to the guilty plea, Defendant [Barker] agreed to waive the appeal of his conviction of February 5-6, 2019." *Id.* at 43.

On June 19, 2020, Mr. Barker filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1, challenging his February 2019, conviction for aggravated robbery. *Id.* at 48-56. Mr. Barker alleged: (1) ineffective assistance of trial counsel for advising him not to testify and denying him the right to testify (*Id.* at 54); (2) there was insufficient evidence for an aggravated robbery conviction (*Id.* at 54, 60-61); and (3) denial of right to appeal and related ineffective assistance of appellate counsel for failing to file notice of appeal.[6] (*Id.* at 54). The Circuit Court of Crittenden County held an evidentiary hearing on September 24, 2020, focusing on the third issue - waiver of appeal. (Doc. No. 15-3 at 200, 204, 217-18). At the hearing, appellate counsel Mr. Louden, deputy prosecutor Mr. Michael Snell, trial counsel Mr. Ziegenhorn, and Mr. Barker all testified. *Id.* at 201. Mr. Louden testified Mr. Ziegenhorn asked him to handle Mr. Barker's direct appeal for the Dodge's store aggravated robbery but had not received his case file. *Id.* at 210-12. When he went to get the file, Mr. Ziegenhorn told Mr. Louden about the plea deal and its terms of withdrawing the direct appeal. *Id.* at 212, 215. As such, Mr. Louden testified he signed and submitted the notice of withdrawal and agreed that there was nothing unusual about the deal. *Id.* at 212. Mr. Snell confirmed Mr. Louden's testimony, adding his strategy behind the plea deal was to "get [Mr. Barker] off the streets" because, in his view, Mr. Barker's ability to rack up multiple charges of aggravated

---

[6] While Mr. Barker named his trial counsel, Mr. Ziegenhorn, in his petition, ineffective assistance of appellate counsel is a more appropriate claim. (*See* Doc. No. 15-1 at 60). On March 4, 2019, Mr. Louden was appointed as counsel on appeal and relieved Mr. Ziegenhorn of any further responsibility. *Id.* at 25.

5

robbery within a short period of time, including while felony charges were pending against him, made him a danger to the community. *Id.* at 224. He confirmed another conviction on any of the three pending aggravated robberies would automatically result in a life sentence. *Id.* at 223-25. He testified that the Sonic aggravated robbery, which was up next for trial, had very strong evidence against Mr. Barker. *Id.* at 226-27. He reported that witness statements and identification, physical evidence, and surveillance video clearly showed Mr. Barker threatening the manager with a knife before taking the end-of-night till. *Id*. With both parties aware of the pending charges and their potential outcomes, Mr. Snell testified that he offered Mr. Barker, through his attorney, to request entry of *nolle prosequi* on all the outstanding matters if Mr. Barker pled to a reduced charge of robbery and withdrew his direct appeal. *Id.* at 227-29. Mr. Snell emphasized withdrawing the appeal was a condition of the plea, stating "I made this point emphatically, without the dismissal of the appeal. . . I would not allow [Mr. Barker] to plead to just a single charge and I would not have dismissed those other cases." *Id.* at 230. He elaborated, "if [Mr. Barker] had not dismissed the appeal I would have re-filed." *Id.* at 231. Mr. Snell explained why there was no reference to the waiver in either the plea colloquy or in the written plea papers as follows:

> Q [Mr. Young, Prosecutor for the State]: Now, in regards to the appeal issue, I don't see anything in the paperwork talking about that. Why is that?
>
> A [Mr. Snell]: Well, at the time this was probably my second jury trial as a prosecutor. The paperwork typically is completed by the prosecutor's office, but not necessarily me. And learning by experience, of course, I've gotten better at filing in the remarks area of the sentencing order –
>
> Q: Because there is no place for dismissing an appeal on the sentencing order?
>
> A: No, there's not a place for doing that, and I did not make a note of it, but that was part of the plea bargain that was put forth that if that appeal were not dismissed then this offer would not stand.

6

*Id.* at 231.

Mr. Ziegenhorn confirmed the prosecutor's testimony, noting that he had reviewed the discovery in the various cases, including the Sonic aggravated robbery charge that was "more concerning," before negotiating the global plea deal on all of Mr. Barker's outstanding charges. *Id.* at 264-66. He testified that withdrawal of the direct appeal was a condition of the plea agreement and that he discussed the waiver with Mr. Barker. *Id.* at 268-69. When asked about whether Mr. Barker agreed to the dismissal, Mr. Ziegenhorn answered as follows:

> A [Mr. Ziegenhorn]: I can tell you exactly how it went down, but, yes, he – he agreed to take the plea deal knowing that was the deal. However, he did state that he – we went in the back room, he was sitting down at the table. I told him that we were entering into a plea deal, that the deal was 20 years and there would be the waiver of the appeal. And he said, I'm not going to do that appeal. And I said, well we're not going to have a deal then. And he said, well, I wanted a deal. I said, well, you're going to lose your appeal. And he sat there for a moment and then he said, oh, I'll get my appeal.
>
> . . .
>
> Q [Mr. Young]: But he knew that the terms of the deal were contingent upon the appeal being dismissed?
>
> A: Yes.
>
> Q: And he agreed to take that deal, correct?
>
> A: Correct, he did.

*Id.* at 269-70.

On cross-examination, Mr. Barker asked Mr. Ziegenhorn why the waiver of appeal was not brought up in front of the judge during the change of plea hearing and why he did not sign the withdrawal notice. *Id.* at 271. Mr. Ziegenhorn answered that he did not know if or why the Judge did not mention it, but reasserted he knew it was part of the deal. *Id.* at 271. In regard to the signature, Mr. Ziegenhorn testified he did not have anything

to do with that." *Id.*

Mr. Barker testified at length about the Sonic robbery and believed he would not have been convicted of any of the charged aggravated robberies at the time of his plea, because he considered them all "simple robberies." *Id.* at 237-41. He testified he pled on March 12, 2019, because "none of the charges was aggravated robbery" anyway. *Id.* at 238. He testified the circuit court entered *nolle prosequi* on the felon-in-possession charge prior to his plea based on testimony given at trial, that he was denied the right to testify during trial, and that he was so persuasive during his testimony at sentencing that the jury decided to give him the minimum sentence. *Id.* at 238-42. Thus, he reasoned, if he'd been given the opportunity to testify during the guilt phase, it "would have been a mistrial or either dismissed." *Id.* at 242. He repeatedly denied that he agreed to withdraw his direct appeal, claiming it was not a part of the deal but instead a conspiracy against him. *See e.g., id.* at 241, 248, 251-54.

On November 20, 2020, the circuit court denied relief in a written order. (Doc. No. 15-1 at 75-84). The court ruled it lacked jurisdiction to hear the petition because Mr. Barker filed it more than sixteen months after his trial, making it untimely. *Id.* at 75. The court then made fifteen findings of fact toward the merits of Mr. Barker's claim regarding the withdrawal of his direct appeal. *Id.* at 75-84. The court found Mr. Louden, Mr. Snell and Mr. Ziegenhorn were credible in their testimony and stated, "Snell made the plea offer to Ziegenhorn, Ziegenhorn communicated the plea offer to Barker, and Baker accepted the offer, including the waiver-of-appeal element." *Id.* at 79-80. The circuit court concluded, stating:

> Barker argues that this attorney was ineffective and denied him his appeal right. Not so. Ziegenhorn acquired from the State and for Barker substantial concessions. Waiver-of-appeal agreements are permissible.[2] And the Court finds that the credible testimony demonstrated Barker, to receive the benefit of the State's

concessions, agreed to waive his appeal.³ Neither Ziegenhorn nor Louden were deficient, and since Barker received the benefit of his bargain, he suffered no prejudice. So Barker's argument is meritless.⁴

² *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) ("As a general rule, a defendant is allowed to waive appellate rights.")
³ Finding No. 14; *Gaye v. State*, 2009 Ark. 201, at 5, 307 S.W.3d 1, 4 ("[Appellate courts] defer to the trial court's determination of credibility on Rule 37 appeals").

⁴ An ineffective-assistance claim must satisfy two elements. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, counsel's performance was deficient, depriving the claimant of the guaranteed Sixth Amendment's counsel right. *Ibid.* And second, because of counsel's deficient performance, the defense was prejudiced. *Ibid.*

*Id.* at 83.

On December 2, 2020, Mr. Barker filed a notice of appeal to the Arkansas Supreme Court. (Doc. No. 15-5 at 1-2). On May 5, 2021, Mr. Barker filed a motion for rule on the clerk, asking for the transcripts of the Rule 37 proceedings, Dodge's aggravated robbery trial, and guilty plea hearing. *Id.* at 7-11. The Arkansas Court of Appeals granted the motion and issued a writ of certiorari to the court reporter requesting a complete transcript of the record and proceedings. *Id.* at 15-16. On June 25, 2021, the Court of Appeals set a briefing schedule, making Mr. Barker's appellant brief due August 4, 2021. *Id.* at 18. In July, Mr. Barker continued to file motions, complaining, *inter alia*, he had not received his trial transcript. *Id.* at 19-21. The Arkansas Court of Appeals denied the motions on September 1, 2021. (Doc. No. 15-4 at 6). In the denial entry, Chief Judge Harrison noted he would "treat as a motion for extension of time to file the brief and grant" as such. *Id.* Mr. Barker moved for reconsideration, which was denied on October 20, 2021. *Id.* at 6-7. Mr. Barker did not take any other action on his appeal, as such, on March 22, 2022, the State moved to dismiss the appeal for failure to prosecute. *Id.* at 8. The Arkansas Court of Appeals dismissed the appeal on April 13, 2022. (Doc. No. 17-1).

Mr. Barker filed the instant Petition for Writ of Habeas Corpus on January 5, 2022. (Doc.

9

No. 2). Mr. Barker alleges the following grounds for relief: (1) insufficiency of the evidence to support the Dodge's aggravated robbery conviction; (2) denial of the right to appeal his conviction; (3) ineffective assistance of appellate counsel by withdrawing the appeal; and (4) ineffective assistance of trial counsel by denying Mr. Barker the ability to testify during the guilt phase of trial.[7] (Doc Nos. 2 at 3, 3 at 2-13, 4 at 2-3). Respondent contends that all Mr. Barker's claims are inexcusably procedurally defaulted. (Doc. No. 15 at 2, 22-25). After careful consideration of Mr. Barker's Petition (Doc. No. 2), Brief in Support (Doc. No. 3), Amended Petition for Writ of Habeas Corpus (Doc. No. 4), and the Response (Doc. No. 15), I find the Petition should be dismissed.

## II.  ANALYSIS

### A. Challenge to State Court's Factual Findings

Mr. Barker, as he did during his Rule 37 hearing, denies that waiving his direct appeal was a part of his global plea agreement. (Doc. No. 3 at 4-5, 7-8). The Crittenden County Circuit Court resolved this factual question against Mr. Barker, finding instead that Mr. Snell and Mr. Ziegenhorn were credible witnesses, and the plea agreement included a waiver-of-appeal element. (Doc. No. 15-1 at 79-80). "Challenges to the state court's factual findings place a [] weighty burden on the petitioner. 'Unless [Mr. Barker] rebuts by clear and convincing evidence the presumption that a state court's finding was correct, 28 U.S.C. § 2254(e)(1), and shows that the finding was unreasonable, 28 U.S.C. § 2254(d)(2), we may not grant him relief.'" *Forrest v. Steele*, 764 F.3d 848, 854 (8th Cir. 2014) (quoting *Taylor v. Roper*, 577 F.3d 848, 859 (8th Cir.

---

[7] In Mr. Barker's Rule 37 Petition he conflates claim two and three into one singular ineffective assistance of appellate counsel claim and it is unclear if he means to make two separate claims in his current Petition, so as a precaution, I address them each individually. (*See* Doc. Nos. 3 at 2-13, 15-1 at 54, 15-3 at 204).

10

2009)). In the face of compelling and credible evidence to the contrary, Mr. Barker simply continues to deny he in fact waived his appeal as a condition of the plea agreement. Thus, he wholly fails to rebut the presumption of correctness by clear and convincing evidence and his Petition should be dismissed on this basis alone.

### B. Procedural Default

All of Mr. Barker's claims are inexcusably procedurally defaulted. Mr. Barker argues: (1) insufficiency of the evidence to support the Dodge's aggravated robbery conviction; (2) denial of the right to appeal his conviction; (3) ineffective assistance of appellate counsel by withdrawing the appeal; and (4) ineffective assistance of trial counsel by denying Mr. Barker the ability to testify during the guilt phase of trial. (Doc Nos. 2 at 3, 3 at 2-13, 4 at 2-3).

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). In order to fairly present a federal claim to the state courts, the

petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Id*. Moreover, if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Regarding his first claim, Mr. Barker did not bring his sufficiency-of-the-evidence argument in a direct appeal, and "a claim that could have been raised at trial or on direct appeal, but was not, is not cognizable in a Rule 37 petition." *See McDougald v. Lockhart*, 942 F.2d 508, 511 (8th Cir. 1991) ("A Rule 37 petition that merely presents constitutional arguments based upon the record will be denied because Rule 37 is not a substitute for an appeal or an alternative method of reviewing mere trial errors."). Likewise, his remaining three claims are barred. Mr. Barker failed to raise a timely Rule 37 petition; thus, the state court did not have jurisdiction to consider his denial-of-appeal-right claim, his related ineffective assistance of appellate counsel claim, or

his ineffective assistance of trial counsel claim regarding his right to testify. (Doc. No. 15-1 at 83). Additionally, he abandoned his appeal of the circuit court's denial by failing to follow the Arkansas Court of Appeals briefing schedule. (Doc. No. 17-1). Because Mr. Barker did not "fairly present" his federal habeas claims to the appropriate state courts, federal habeas review is barred unless he can demonstrate an exception. *Armstrong*, 418 F.3d at 926.

The cause-and-prejudice exception requires a showing of "some objective factor external to the defense" that impeded development of the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mr. Barker does not identify any such impediment. Regarding his first claim, Mr. Barker claims he was not aware of the withdraw requirement and Mr. Louden withdrew without his knowledge. (Doc. No. 3 at 7). However, Mr. Louden did not abandon his client without notice as Mr. Barker alleges; rather, he was acting in accordance with Mr. Barker's plea agreement, thus procedural default is not excused. *Cf. Maples v. Thomas*, 565 U.S. 266, 281 (2012). Likewise, his second, third, and fourth claims' default are without impediment, as Mr. Barker provides no excuse for failing to bring a timely Rule 37 petition. He summarily states missing the deadline "was error of the Circuit Court Judge" and gives no other explanation. (Doc. No. 3 at 11).

If Mr. Barker intends to instead bring a claim of actual innocence as a "gateway" claim, as his argument emphasizes that he did not commit aggravated robbery because he lacked a weapon, it also fails. (Doc. No. 3 at 2-13). A gateway claim is "a credible showing of actual innocence [that] may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This rule, also known as the fundamental miscarriage-of-justice exception, "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the

incarceration of innocent persons." *Id*. (quoting *Herrera*, 506 U.S. at 404). But the United States Supreme Court has characterized tenable actual-innocence gateway pleas as "rare." *Id*. at 386. A petitioner who raises a gateway claim of actual innocence must establish (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him. *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). Evidence is "new" if it was not available at the time of trial through the exercise of due diligence. *Nooner v. Hobbs,* 689 F.3d 921, 934 (8th Cir. 2012). Additionally, to establish a claim of actual innocence, the petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). Mr. Barker does not provide any new evidence, instead he reiterates he only performed "theft" because he never had a weapon. (Doc. No. 3 at 2-3). This explanation does not suffice. To be convicted of aggravated robbery, a person must be found to have committed robbery as defined in A.C.A. § 5-12-102,[8] and the person "(1) is armed with a deadly weapon; (2) *represents by word or conduct that he or she is armed with a deadly weapon*; or (3) inflicts or attempts to inflict death or serious physical injury upon another person." A.C.A. § 5-12-103(a) (emphasis added). Regardless, Mr. Barker never claims factual innocence, only legal insufficiency of the evidence. *See e.g.*, *McNeal*, 249 F.3d at 749. Therefore, he does not come close to meeting the gateway standard, much less the "extraordinarily high" standard applicable to a freestanding claim. *Herrera*, 506 U.S. at 417.

Finally, the *Martinez* exception for substantial claims of ineffective assistance of trial

---

[8] A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. A.C.A. § 5-12-102(a).

counsel, which allows federal habeas review where there was no counsel or ineffective counsel in the initial-review collateral proceeding, is also unavailable. *Martinez v. Ryan*, 566 U.S. 1 (2012); *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013) (*Martinez* applicable in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal). To show a "substantial" claim the prisoner must demonstrate that the claim was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 687 (1984),[9] and that the claim has some merit. *Martinez*, 566 U.S. at 14. As previously noted, Mr. Barker was pro se in the Rule 37 proceeding, so *Martinez* may be applicable to some of his claims.

Mr. Barker's sufficiency-of-the-evidence and denial-of-appeal-right claims do not qualify, as they are not ineffective assistance of trial counsel claims. *See Dansby v. Hobbs*, 766 F.3d 809, 833-34 (8th Cir. 2014) (holding *Martinez* does not extend "from the ineffectiveness claim itself to underlying claims"). Nor does his third claim warrant relief, *Martinez* does not allow a federal court to hear a procedurally defaulted claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides alleged ineffective assistance. *Davila v. Davis*,

---

[9] Under *Strickland*, the petitioner must demonstrate counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and the deficient performance prejudiced the defense, depriving the defendant of a fair trial. 466 U.S. at 687. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. In conducting this review, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the performance prong, the petitioner must be able to prove that his lawyer's performance was unreasonable and not valid trial strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Thai v. Mapes*, 412 F.3d 970, 978-79 (8th Cir. 2005). To satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Armstrong v. Kemna*, 590 F.3d 582, (8th Cir. 2010) (citations omitted). A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*.

15

137 S. Ct. 2058, 2065 (2017) (denying to extend *Martinez* to ineffective assistance of appellate counsel).   Finally, his last claim, alleging ineffective assistance of trial counsel for advising him not to and denying him the right to testify, does not meet the *Strickland* standard nor does it have merit.   Mr. Barker claims he desired to give testimony at trial, his attorney had discussed this with him, and closer to trial his attorney "changed his defense strategy without [Mr. Barker's] consent." (Doc. No. 4 at 2).   However, during trial Mr. Barker waived his constitutional right to testify. The trial transcript reveals otherwise:

> MR. ZIEGENHORN:   Mr. Barker does not intend to testify at this time, we've spoken about the pros and cons, and we believe that he should not, we wish to waive his right to testify, Your Honor.
>
> THE COURT:   All right. And, Mr. Ziegenhorn, have you explained to your client that he has a Constitutional Right to either testify or not testify, the decision is his?
>
> MR. ZIEGENHORN:   Yes, he's aware of that.
>
> THE COURT:   And that after consulting with Mr. Barker, he's agreed to waive his right to testify?
>
> MR. ZIEGENHORN:   Yes.
>
> THE COURT:   Is that correct, Mr. Barker?
>
> MR. BARKER:   Yes, Your Honor.

Doc. No. 25-1 at 199.   As such, his attorney did not deny him the right to testify as he alleges. Additionally, Mr. Barker claims he was so persuasive during sentencing that, if given the opportunity to testify during the guilt phase, it "would have been a mistrial or either dismissed." Doc. No. 25-1 at 242.   This self-serving assertion does not satisfy the prejudice prong, thus neither prong has been met.   Because no exception applies, all of Mr. Barker's claims are inexcusably procedurally defaulted.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Barker has made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability should issue.

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Barker's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) and Amended Petition for Writ of Habeas Corpus (Doc. No. 4) be DISMISSED.

2. A certificate of appealability not be issued.

DATED this 17th day of August 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE